UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CHANNING HUTCHINS                                       Case No.: 23-CV-80210-ROSENBERG

     Plaintiff,
v.

FRONTIER AIRLINES, INC.; PALM
BEACH COUNTIES DEPARTMENT OF
AIRPORTS; and PALM BEACH COUNTY
SHERIFF OFFICE

     Defendants.
_____/

**FRONTIER AIRLINES, INC. MOTION FOR SUMMARY JUDGMENT**

Defendant, FRONTIER AIRLINES, INC. ("Frontier"), through counsel, moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment on Plaintiff's Complaint.

## I. INTRODUCTION

The instant action was commenced by *pro se* Plaintiff, Channing Hutchins, for injuries he claims to have sustained when he was denied transportation on, and deplaned from, Frontier flight 257 ("subject flight") scheduled to depart from Palm Beach, Florida (PBI) on January 14, 2019. Plaintiff contends that his removal constituted racial discrimination pursuant to 42 U.S.C. § 1981.

However, with discovery now closed, Plaintiff has failed to present *any* evidence that racial animus was the but-for cause of his removal from the subject flight. Plaintiff never served proper and timely discovery requests on Frontier; never disclosed any expert witnesses; failed to appear for his properly noticed deposition on August 3, 2023; and never requested any depositions of Frontier or its employees. (*See* Ex. A, Certificate of Non-Appearance Dated August 3, 2023). Therefore, Plaintiff has not – and <u>cannot</u> – meet his initial burden of establishing a *prima facie* case of discrimination, much less refute Frontier's overwhelming evidence demonstrating that it

1

had a legitimate, non-discriminatory reason for refusing Plaintiff transportation and deplaning him from the aircraft.

Indeed, the evidence definitively shows that Frontier refused Plaintiff service and had him deplaned from flight 257 out of its concern that his severe body odor – and his fellow passengers' extreme reactions to his odor – might threaten the safety, wellbeing, and comfort of the passengers and crew and interfere with the flight crew's ability to perform their duties. Accordingly, summary judgment should be granted.

## II.    STATEMENT OF MATERIAL FACTS

Frontier hereby references and incorporates its Statement of Material Facts (the "SMF") pursuant to Local Rule 56.1(1) as set forth herein.

## III.    PROCEDURAL HISTORY

Plaintiff filed this lawsuit on January 6, 2023, against Frontier, Palm Beach Counties Department of Airports, and Palm Beach County Sheriff Office in the Circuit Court of the Fifteenth Judicial Circuit in Palm Beach County, Florida, asserting a myriad of claims rooted in federal law, including racial discrimination pursuant to 42 U.S.C. § 1981. Frontier removed this action to the United States District Court for the Southern District of Florida on February 8, 2023, pursuant to 28 U.S.C. § 1331. On February 16, 2023, Frontier filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief can be granted. On April 18, 2023, the court dismissed 14 of the 15 counts in the Complaint, leaving only Plaintiff's claim of racial discrimination under § 1981.[1]

---

[1] The court dismissed, with prejudice, the following claims: (1) racial discrimination in violation of 42 U.S.C. § 2000d; (2) 10 USC § 897 – false imprisonment; (3) first amendment violation; (4) interference with constitutional rights; (5) equal protection; (6) false accusation; (7) federal tort claims; (8) negligent infliction of emotional distress; (9) intentional infliction of emotional distress; (10) breach of contract; (11) negligence; (12) wrongful removal; and (13) perjury. The court dismissed, without prejudice, Plaintiff's claim based on the Florida Civil Rights Act, granting him leave to replead his claim until April 24, 2023; however, Plaintiff failed to do so.

Fact discovery closed on August 4, 2023, and expert discovery closed on August 21, 2023. The parties unsuccessfully attempted to mediate this matter on August 16, 2023.

### IV.     STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure 56, summary judgment may be entered only where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Burger King Corp., v. Barnes*, 1 F. Supp. 2d 1367, 1369 (S.D. Fla. 1998). An issue of fact is material if it is a "[l]egal element of the claim under the applicable substantive law which might affect the outcome of the case." *Id*. A genuine issue exists "[i]f the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id*. In applying this standard, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. But, the non-moving party may not rest upon the mere allegation or denials of the adverse party's pleadings. *Id*. Additionally, conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1312 (S.D. Fla. 2012).

What is more, the mere existence of a scintilla of evidence in support of the opposing party's position is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Rather, the party opposing summary judgment must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*. Similarly, the "failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment." *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## V.   ARGUMENT

### A.   Plaintiff's removal is permitted by Federal Aviation Regulation 42 U.S.C. § 44902(b), and Plaintiff cannot establish his removal was arbitrary or capricious.

Under 42 U.S.C. § 44902(b), an air carrier cannot be held liable for refusal to transport a passenger if "the carrier decides [the passenger] is, *or might be*, inimical to safety." 42 U.S.C. § 44902(b) (emphasis added); *Xiaoyun Lu v. Airtran Airways, Inc.,* 631 F. App'x 657, 660-61 (11th Cir. 2015) (quoting *Cerqueira v. Am. Airlines, Inc.,* 520 F. 3d 1, 12 (1st Cir. 2008)). Section 44902(b) is not merely a defense, rather the statute is an affirmative grant of permission to the air carrier to remove a passenger from a flight. *Cerqueira*, 520 F. 3d at 13.[2]

The air carrier's refusal "discretion is very broad." *Id.* Generally, airlines have broad authority to decline to carry passengers for safety reasons because "Congress has, by statute, explicitly given safety the highest priority." *Id.* As such, the reasonableness of an air carrier's decision is to be tested on information available to the airline at the moment a decision is required. *Cordero v. Cia Mexicana de Aviacion, S.A.*, 681 F. 2d 669, 672 (9th Cir. 1982). Therefore, there is no duty on the part of the Captain to investigate the recommendations by flight attendants for removal of a passenger, and the Captain is entitled to take representations of flight attendants at face value. *Id.*

While § 44902(b) does not preclude a plaintiff from challenging a removal decision through a § 1981 claim, it does require that "the air carrier's decision to refuse air transport be shown to be arbitrary or capricious." *Cerqueira*, 520 F. 3d at 14; *see also Karrani v. Jet Blue Airways Corp.*, 825 F. App'x 535, 536 (9th Cir. 2020); *Xiaoyun Lucy Lu,* 631 F. App'x at 661

---

[2] *See also Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1055 ("Inimical "means…opposite or adverse in effect or tendency") (citing Black's Law Dictionary (10th ed. 2014)). "What constitutes behavior 'inimical to safety' is not defined by the statute; however, courts have generally granted broad discretion to the airline when making that determination." *Cintron v. Jetblue Airways Corp.*, 324 F. Supp. 3d 248, 255 (D. Mass 2018).

4

(plaintiff has the burden to show that § 44902(b) does not apply); *Shaffy v. United Airlines, Inc.*, 360 Fed. Appx. 729, 730 (9th Cir. 2009). Conclusory statements and bare assertions are insufficient to meet the arbitrary and capricious standard. *Xiaoyun Lucy Lu*, 631 F. App'x at 661-62.

For example, the 9th Circuit in *Shaffy v. United Airlines, Inc.* discussed the interplay between § 1981 racial discrimination claims and an airline's discretion to remove passengers per § 44092(b). In *Shaffy*, Plaintiff was removed from her flight after she continued to remove her small dog from its carrier despite flight attendants advising her to keep the dog contained. *Shaffy*, 360 Fed. App'x at 730. The Captain of the flight received numerous calls from flight attendants regarding Plaintiff's behavior, including the lead flight attendant who stated that Plaintiff would not comply with direction, the situation was distracting for the flight crew, and the lead flight attendant would not remain on the flight if Plaintiff stayed on board. *Id*. The Captain subsequently determined that both the dog and Plaintiff presented a possible safety issue and she was removed from the flight during its scheduled stop in Las Vegas. *Id.*

Plaintiff filed suit alleging, among other claims, racial discrimination pursuant to § 1981. The court granted summary judgment to the airline and noted that the Captain "[w]as entitled to accept at face value the representations made to him by his flight crew." *Id*. Moreover, there was no evidence to indicate that Plaintiff's Iranian heritage played a role in the removal or that the airline was aware of it at the time the removal decision was made. *Id*.

Here, Plaintiff has failed to prove his removal was arbitrary and capricious, and, therefore, has failed to overcome Frontier's broad authority to refuse transportation under § 44902(b). Plaintiff has provided nothing more than conclusory statements and bare assertions contained within his Complaint that his removal from the subject flight was due to racial discrimination.

There is no evidence in the record or produced during discovery to indicate that Plaintiff was refused service and deplaned from the flight for any other reason than Frontier's concern that Plaintiff's severe body odor – and his fellow passengers' extreme reactions to his odor – might threaten the safety, wellbeing, and comfort of the passengers and crew and interfere with the flight crew's ability to perform their duties. (SMF at ¶¶ 29-31). This is entirely consistent with the broad authority granted to the Frontier under § 44902(b) and further supports Frontier's decision to remove Plaintiff for a non-discriminatory and objective reason.

**B.   Plaintiff §1981 claim fails because he has not provided *any* evidence that his removal was motivated by racial animus, and, therefore, has failed to meet his burden under the *Douglas/Burdine* framework.**

**1. The *Douglas/Burdine* Framework and Plaintiff's burden of proof.**

Plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *Makhzoomi v. Southwest Airlines, Co*., 419 F. Supp. 3d 1136, 1148 (N.D. Cal. 2019) (citing *Lindsey v. SLT L.A., LLC*, 447 F. 3d 1138, 1144 (9th Cir. 2006)). "To establish a *prima facie* case of racial discrimination in non-employment contracts, a litigant must show that: (1) he is a member of a protected class, (2) he attempted to contract for certain services, (3) he was denied the right to contract for those services, and (4) such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class." *Kinnon v. Arcoub, Gopman & Assocs. Inc*., 490 F. 3d 886, 889-91 (11th Cir. 2007). Therefore, to prevail on a § 1981 claim, a plaintiff must establish that he was treated differently than other similarly situated individuals on account of his race or that the defendant purposefully discriminated against him because of his race. *Benjamin v. Am. Airlines, Inc*., No. CV-213-150, 2015 U.S. Dist. LEXIS 167488 at *16 (S.D. Ga. Dec. 15, 2015*); see also Bary v. Delta Airlines, Inc*., No. 02-CV-5202, 2013 U.S. Dist. LEXIS

46954 at *22 (E.D.N.Y. March 29, 2013) (the defendant's actions must be intentionally and purposefully discriminatory and motivated by Plaintiff's race).

If Plaintiff's § 1981 claim is premised upon circumstantial evidence or indirect proof, the court employs a three-part burden-shifting inquiry delineated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) and, subsequently, *Tex. Dep't of Cmty. Affairs v. Burdine* (1981). As a preliminary matter, the court noted that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The court then explained the burden-shifting mechanism in three distinct parts. First, as noted above, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Second, if plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the action. *Id*. The defendant's burden is only one of production. *Id*. Third, if the defendant produces evidence of a non-discriminatory reason for the action, the plaintiff "[m]ust then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*.

Here, even if Plaintiff plausibly *pleaded* a circumstantial *prima facie* case of intentional racial discrimination,[3] he has not *established* a circumstantial *prima facie* case through affirmative evidence obtained in discovery, and has instead rested on the unfounded and unsupported

---

[3] *See* the Court's ruling on Frontier's Motion to Dismiss (*See* ECF No. 31 at p. 4), noting that Plaintiff sufficiently pleaded that "he is a Black man and that Frontier Airlines treated him differently than the other passengers" and that Plaintiff pled "facts from which the Court can infer that Frontier Airlines removed him from the flight because of intentional racial discrimination." (*Id.* at pp. 4-5).

allegations of discrimination set forth in his Complaint. For example, Plaintiff never produced any evidence to show there were other "similarly situated" passengers (*i.e.*, malodorous) who were "not members of his protected class" (*i.e.*, Caucasian, Asian, or non-white Hispanic passengers) who were allowed to stay on the aircraft in spite of their odor. This alone would be sufficient grounds to grant summary judgment in Frontier's favor. However, as set forth below, Plaintiff has also failed to satisfy – and *cannot* satisfy – the two remaining evidentiary prongs of the *Douglas*/*Burdine* framework, further warranting summary judgment.

### 2. Frontier established a legitimate, non-discriminatory reason for Plaintiff's removal.

Here, the evidence unequivocally demonstrates that Plaintiff was removed from the subject flight due to severe body odor, not because of his race. Palm Beach Sheriffs initially observed Plaintiff sleeping in and around the Palm Beach International Airport for multiple days prior to the subject flight. (SMF at ¶¶ 2-8). When confronted about his trespassing, Plaintiff told officers that he was homeless. (SMF at ¶ 7). Plaintiff was ordered to leave the premises until January 14, 2019, the day of his scheduled flight. (SMF at ¶ 8).

Three days later, on the date of the subject incident, accounts of Plaintiff's body odor began hours prior to boarding the subject flight. (SMF at ¶¶ 9-10). At approximately 7:13 a.m. on the date of the incident, a sheriff who made contact with Plaintiff after calls that he was sleeping in locations throughout Palm Beach International Airport, reported that Plaintiff had "a strong odor about his person" and was "unkept." (SMF at ¶¶ 9-10). This interaction with a third-party is the first documented record of Plaintiff's severe smell that eventually led to his removal later the same day. Later that day, less than one hour before the subject flight, Plaintiff again encountered law enforcement over concerns that was sleeping in another area of the PBI. (SMF at ¶ 11).

8

Eight hours later, while Plaintiff boarded the subject flight, additional complaints of his body odor were reported by both passengers and the flight crew. For example, Flight Attendant ("FA") Rachael Longoria, recalled eight separate passengers approaching her during the boarding process to complain about Plaintiff's smell. (SMF at ¶ 12). Moreover, FA Longoria personally perceived Plaintiff's smell and described it as "extreme body odor." (SMF at ¶ 13). Another flight attendant, FA Debra Schwab, similarly explained that the smell was "very extreme" to the point that it permeated the entirety of the aircraft cabin. (SMF at ¶ 16). As a result of the odor, FA Longoria witnessed passengers seated near Plaintiff cover their mouths and noses with their shirts in an attempt to evade the odor. (SMF at ¶ 14).

Both the Captain ("CA"), Cyprian Bunker, and the First Officer ("FO"), Thomas Seymour, have consistent recollections of Plaintiff's odor and his subsequent removal, too. CA Bunker and FO Seymour noted that several passengers complained, got up from their seats, and requested to be moved due to Plaintiff's odor. (SMF at ¶¶ 24, 26). Specifically, FO Seymour described that several passengers refused to sit in their assigned seats, thereby creating difficult logistical issues regarding seating as the flight was at maximum capacity. (SMF at ¶¶ 27, 30). Notably, FA Longoria, FA Schwab, CA Bunker, and FO Seymour do not recall Plaintiff's race or ethnicity. (SMF ¶¶ 15, 17, 34). What is more, CA Bunker and FO Seymour did not visually perceive Plaintiff at the time the removal decision was made. (SMF at ¶ 34).

A passenger-witness also echoes the flight crew's account of the odor and the issues it presented during boarding. The passenger sitting next to Plaintiff in seat 6B, Mr. Kevin Foster, also encountered Plaintiff' smell and labeled it as "horrible" and the worse body odor he's ever experienced. (SMF at ¶ 20). He first encountered the smell during boarding and observed that Plaintiff appeared to be homeless, with no luggage or carry-on on his person. (SMF at ¶ 19). Mr.

9

Foster further stated that the intensity of the smell required him to use his shirt to cover his mouth and nose in an effort to evade it. (SMF at ¶ 20). He additionally recalled several passengers seated near him complaining of the smell. (SMF at ¶ 21). Mr. Foster believed that the subject flight would have been extremely uncomfortable and difficult if Plaintiff had remained on the aircraft. (SMF at ¶ 22).

Due to a continuous flow of passenger complaints and inability to re-seat passengers, FA Longoria approached CA Bunker and FO Seymour prior to takeoff regarding Plaintiff's odor. (SMF at ¶ 28). Notably, the inability to reseat Plaintiff additionally presented logistical problems as passengers refused to sit in their assigned seats. (SMF at ¶ 27). After deliberation with the flight attendants, CA Bunker made the decision to remove Plaintiff from the subject flight as the crew believed Plaintiff's odor, and passengers' responses to the odor, would interfere with the crew's ability to perform their duties both during the boarding process and in-flight, inherently creating concerns of safety. (SMF at ¶¶ 31, 32, 35).

The decision to remove Plaintiff for these reasons is not only supported by 42 U.S.C. § 44902(b), as discussed *supra*, but also Frontier's Contract of Carriage. (SMF at ¶ 36). Particularly, pursuant to Section 3(B)(15), Frontier may refuse to provide transportation to any person or require any person leave an aircraft or be removed from an aircraft if the passenger interferes with any of member of the fight crew in pursuit of their duties or attempts to do so. (SMF at ¶ 36). The flight crew stated that Plaintiff's presence aboard the aircraft directly interfered with their abilities to perform their duties both in-flight and during the boarding process, specifically due to the repeated and continuous stream of complaints from other passengers about Plaintiff's odor. (SMF at ¶¶ 29-30). Given this distraction, the Captain had no choice but to remove Plaintiff prior to takeoff. (SMF at ¶ 35).

Frontier has adequately provided a legitimate, non-discriminatory reason for Plaintiff's removal from the subject flight – Plaintiff's odor. This non-discriminatory reason for his removal is supported by sworn third-party documentation, the flight crew, and passenger-witnesses. Despite nine months of litigation, Plaintiff is unable to offer any evidence in the record to support otherwise.

### 3. Plaintiff's has wholly failed to prove that the legitimate, non-discriminatory reason for his removal was a pretext for discrimination.

Per the *Douglas/Burdine* framework, after the defendant has presented a legitimate, non-discriminatory reason for the action (as Frontier has done here), the burden shifts back to the Plaintiff to prove that the proffered reasons were a pretext for discrimination with "specific and substantial" evidence. *Makhzoomi*, 419 F. Supp. 3d at 1151. Plaintiff may prove pretext in two ways: (1) indirectly by showing that the defendant's explanation is unworthy of credence because it is inconsistent or otherwise not believable; and (2) directly by showing that unlawful discrimination more likely motivated the employer. *Id*. Importantly, "the mere fact that a defendant acted incorrectly or undesirably cannot adequately demonstrate pretext. Rather, a plaintiff must prove that the defendant did not honestly believe the reasons it gave." *Huggar v. Northwest Airlines, Inc.*, No. 98-C-954, 1999 U.S. Dist. LEXIS 1026 at * (N. D. Ill. Jan. 27, 2009).

Plaintiff has produced no evidence – whether in the form of records, deposition testimony, or expert opinions – to show that Frontier's explanation for removal is "unworthy of credence because it is inconsistent or otherwise not believable," or that Frontier's actions were more likely motivated by "unlawful discrimination." To the contrary, <u>even Plaintiff's own statements</u> support Frontier's non-discriminatory reason for refusing Plaintiff service and deplaning him from the flight. For example, Plaintiff's own Complaint admits that he was removed because of his odor. (SMF at ¶ 23). Yet, Plaintiff continues to rely on his own conclusory assumptions and suspicions,

11

which are inadequate to meet his evidentiary burden. *See Hukman v. Southwest Airlines Co.*, No. 18-CV-1204-GPC-RBB, 2019 U.S. Dist. LEXIS 143209 at *41 (S.D. Cal. Aug. 22, 2019) (summary judgment granted against *pro se* plaintiff where Plaintiff's conjectures and suspicions about the reason for her termination were wholly devoid of evidentiary support, and, therefore, did not rebut defendant's non-discriminatory reasons for her termination).

Finally, Plaintiff fails to provide any indirect evidence of pretext. To the contrary, the flight crew and a passenger consistently attested that Plaintiff was emanating an extremely foul odor that permeated the cabin. (SMF at ¶¶ 13-20, 26, 26). Eyewitness accounts, which were corroborated by prior reports from Plaintiff's interactions with law enforcement and Customer Service personnel in the day(s) prior to the subject incident are consistent as well, demonstrating the Plaintiff's smell was the *sole* reason for his removal. (SMF ¶¶ 9-10; 24-25) Notably, the Frontier employee who ultimately made the decision to refuse Plaintiff transportation and have him deplaned – the captain of flight F9 257 – lacked any knowledge of Plaintiff's race at the time the decision was made. (SMF at ¶ 34). Moreover, the flight attendants, first officer, and captain all stated that Plaintiff's odor presented both logistical and safety concerns during the boarding process with several passengers complaining and refusing to sit in their assigned seats. (SMF at ¶¶ 29-31). A passenger-witness substantiates the flight crew's recollection, recalling that Plaintiff's odor caused several passenger complaints and directly impacted passengers while sitting in their seats prior to takeoff. (SMF ¶¶ 18-22).

Plaintiff's absolute failure to provide *any* evidence of either direct or indirect inference of pretext to rebut Frontier's legitimate, non-discriminatory reason for his removal renders summary judgment appropriate.

## VI. CONCLUSION

For the reasons set forth herein, Frontier respectfully requests that this Court grants its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and issue an order dismissing Plaintiff's Complaint in its entirety and granting such other and further relief as the Court deems just and proper.

Dated: September 5, 2023

Respectfully submitted,

/s/ *Brian T. Maye*

Brian T. Maye
(admitted *pro hac vice*)
Brittany N. Christianson
(admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
Phone: (312) 704-3000
Fax: (312) 704-3001
E-mail: bmaye@hinshawlaw.com

&

Steven D. Lehner
Florida Bar No. 39373
HINSHAW & CULBERTSON LLP
100 South Ashley Drive, Suite 1310
Tampa, Florida 33602
Phone: 813-868-8850
Fax: 813-276-1956
E-mail: slehner@hinshawlaw.com

*Counsel for Frontier Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2023, a copy of the foregoing was sent via electronic mail to Channing Hutchins at channinghutchins@outlook.com.

/s/ *Brittany N. Christianson*

Brittany N. Christianson (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
bchristianson@hinshawlaw.com